Arshad **CHOWDHURY**, Plaintiff,

v.

**NORTHWEST AIRLINES CORP.**
**et al., Defendants.**

**No. C 02–02665 CRB.**

United States District Court,
N.D. California.

Dec. 10, 2002.

Kelli M. Evans, Christy E. Lopez, Relman & Associates, Washington, DC, Alan L. Schlosser, Jayashri Srikantiah, American Civil Liberties Union Foundation of Northern California, San Francisco, CA, for plaintiff.

Donald B. MacDougall, Kenney & Barkowitz LLP, San Francisco, CA, for defendants.

### MEMORANDUM AND ORDER

BREYER, District Judge.

This lawsuit arises out of an incident at San Francisco International Airport approximately one month after September 11, 2001. The gravamen of plaintiff's complaint is that he was denied boarding on a Northwest Airlines ("Northwest") flight even after Northwest, the Federal Bureau of Investigation, and airport security had determined that he did not pose a security risk. Plaintiff, who is a United States citizen of Bangladeshi ancestry, makes claims under state and federal anti-discrimination laws. Defendants move to dismiss on the grounds that plaintiff's state law claims are preempted by federal aviation law and his federal civil rights claims conflict with such law.

### DISCUSSION

### A. The Federal Law Claims

Plaintiff makes claims under 42 U.S.C. section 1981 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. section 2000d. Defendants contend these statutes conflict with certain airline regulations, namely, 49 U.S.C. section 44902(b) and 14 C.F.R. section 91.3(a), 121.533(e). Section 44902(b) provides that an "air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." 14 C.F.R. section 91.3(a) provides that "[t]he pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft." Finally, 14 C.F.R. section 121.533(e) provides:

(e) Each pilot in command has full control and authority in the operation of the aircraft, without limitation, over other crewmembers and their duties during flight time, whether or not he holds valid certificates authorizing him to perform the duties of those crewmembers.

Defendants argue that these more recent, specific statutes trump the general federal civil rights statutes and therefore plaintiff's federal claims must be dismissed.

■ Defendants' argument fails because there is no apparent conflict between the federal statutes prohibiting racial discrimination and the federal law giving air carriers the discretion to refuse to carry passengers for safety reasons. Plaintiff's claim is that he was refused passage because of his ethnicity; Northwest knew he did not pose a safety risk. The fact that the pilot is in control of the aircraft does not, as a court in the Central District recently concluded, "grant [the airlines] a license to discriminate." *Assem Bayaa v. United Airlines*, 02–4368 FMC (C.D.Cal. Oct. 9, 2002). Defendants do not cite any case holding-in any context-that the federal civil rights statutes conflict with another, more recent federal law. In sum, there is simply no legal basis for dismissing plaintiff's federal civil rights claims.

### B. The State Law Claims

Defendants move to dismiss plaintiff's state law civil rights claims on preemption grounds. As the Ninth Circuit recently explained:

Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or laws of any state to the Contrary notwithstanding." Consideration of the issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the states [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress."

*Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir.2000); *see also Bank of America v. City and County of San Francisco*, 309 F.3d 551, 557–58 (9th Cir.2002) ("In determining whether a [state law] is preempted by federal law, [the court's] sole task is to ascertain the intent of Congress."). The Ninth Circuit bases its preemption analysis on the Supreme Court's three categories: (1) express preemption-"where Congress explicitly defines the extent to which its enactments preempt state law;" (2) field preemption-"where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy;" and (3) conflict preemption-"where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Williamson*, 208 F.3d at 1149. Defendants argue that plaintiff's state law claims are preempted under all three categories.

**1. Express preemption**

■ Defendants assert that plaintiff's state law claims are barred by the express preemption provision of the Airline Deregulation Act ("ADA"). That provision provides:

> [N]o state or political subdivision thereof and no interstate agency or other political agency of two or more states shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law related to a price, route or service of an air carrier that may provide air transportation under this subpart.

ADA § 1305(a)(1). Defendants contend that the decision whether to board a passenger falls within the definition of "service." Binding Ninth Circuit law forecloses defendants' argument.

In *Charas v. TWA*, 160 F.3d 1259 (9th Cir.1998), an en banc court held that Congress's " 'clear and manifest purpose' in enacting the ADA was to achieve … the economic deregulation of the airline industry. Specifically, the ADA … was designed to promote 'maximum reliance on competitive market forces.' The purpose of preemption is to avoid state interference with federal deregulation." *Id.* at 1265. The court therefore concluded that "Congress used 'service' in § 1305(a)(1) in the public utility sense-i.e., the provision of air transportation to and from various markets at various times." *Id.* at 1266. " '[S]ervice' … refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided." *Id.* at 1265–66.

The court applied the *Charas* definition of "service" the following year in *Newman v. American Airlines, Inc.*, 176 F.3d 1128 (9th Cir.1999). The plaintiff sued for disability discrimination after the airline refused to allow her to board without a doctor's certificate stating that she could fly (she was in a wheelchair and had a heart problem). The Ninth Circuit held the plaintiff's claim was not preempted: "the term 'service' does not refer to alleged discrimination to passengers due to their disabilities." *Id.* at 1131; *see also Duncan v. Northwest Airlines, Inc.*, 208 F.3d 1112, 1114 (9th Cir.2000) (stating that *Charas* provided "a definitive interpretation of the term 'service.' ").

If refusing to allow a passenger to board because of her disability is not a "service" within the meaning of the ADA, then refusing to allow a passenger to board because of his race is also not a "service." In both cases the challenged conduct-refusing to allow a particular passenger to board-has nothing to do with the provision of transportation to and from various mar-

kets. Accordingly, under binding Ninth Circuit law, plaintiff's state law claims are not preempted by the express preemption provision of the ADA.

Defendants argue that *Newman* directly conflicts with the Ninth Circuit's decision in *Hingson v. Pacific Southwest Airlines,* 743 F.2d 1408 (9th Cir.1984). *Hingson* involved a claim by a blind passenger who was forced to sit in the bulk head. *Hingson,* however, was decided long before the Ninth Circuit's *en banc* decision in *Charas* and the *Newman* court expressly applied the definition of service set forth in *Charas.* The Court must follow *Newman.*

### 2. Field/conflict preemption

The Supreme Court has " recognized that a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively,... or when state law is in actual conflict with federal law." *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995).

The Court has "found implied conflict pre-emption where it is 'impossible for a private party to comply with both state and federal requirements,' ... or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* Defendants have not established as a matter of law that they cannot comply with federal requirements and also comply with California anti-discrimination laws; indeed, as California's laws mimic the federal civil rights laws and the federal civil rights laws do not conflict with the federal aviation statutes, it follows that California's civil rights laws also do not conflict with the federal aviation laws.

Defendants note that the Department of Transportation ("DOT") rejected plaintiff's complaint and therefore there would be something wrong with a jury reaching the opposite conclusion. The DOT, however, determined that it could not resolve plaintiff's complaint because "some of the information obtained from witnesses that is material to our investigation, but not dispositive, is in substantial conflict and in our view the conflict is unresolvable." Moreover, even assuming the DOT had found no discrimination, that determination poses no more of a conflict than when the Equal Employment Opportunity Commission ("EEOC") determines that there is not probable cause to find discrimination and then the complainant nonetheless files a discrimination action.

 While one could imagine a situation where a state civil rights law was applied in such a way as to conflict with federal requirements, it is not apparent at this stage in the proceedings that this case poses such a conflict. In other words, at best, defendants' argument is premature.

Defendants also argue that Congress has preempted the field of airline security and therefore plaintiff's claims are preempted. "Field" preemption "may be inferred when federal regulation in a particular field is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.' In such cases of field preemption, the 'mere volume and complexity' of federal regulations demonstrate an implicit congressional intent to displace all state law." *Bank of America v. City and County of San Francisco,* 309 F.3d 551, 558 (9th Cir.2002).

Assuming, without deciding, that Congress has evidenced an intent to occupy the field of airline security, as with defendants' conflict argument, defendants have not established as a matter of law at this stage in the proceedings that the application of California's anti-discrimination laws in this context treads on that field.

In any event, the Court need not resolve these preemption issues at this time. In *Woodson v. U.S. Airways, Inc.*, 67 F.Supp.2d 554 (M.D.N.C.1999), for example, African–American passengers sued for racial discrimination for being denied boarding. The defendant argued that the state civil rights claims were preempted by the express preemption provision of the ADA. The court tentatively concluded that the claims were not preempted, but denied the defendants' motion without prejudice:

> the court notes that resolving the preemption issue at this stage will not conclude the case because Plaintiffs' Section 1981 claim will proceed at least to the summary judgment stage. Accordingly, because this issue presents an important and difficult question of first impression within this circuit and which involves an issue which may not be appropriate for resolution at the pleading stage, the court will deny Defendants' motion to dismiss Plaintiffs' claims based on state law. The court will reconsider this issue, if necessary, at the summary judgment stage.

*Id.* at 557.

The same reasoning applies here. Defendants repeatedly emphasize that their preemption arguments are matter of first impression *in the court system*, not just in the Ninth Circuit. Moreover, as is explained above, it is difficult to resolve the preemption issue without discovery and a clear understanding of what the facts actually are. *See The Colorado Anti–Discrimination Commission v. Continental Air Lines, Inc.*, 372 U.S. 714, 719, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963) ("The line separating the powers of a State from the exclusive power of Congress is not always distinctly marked; courts must examine closely the facts of each case to determine whether the dangers and hardships of diverse regulation justify foreclosing a State from the exercise of its traditional powers."). As the case is proceeding on the federal claims, and as defendants were unable at oral argument to articulate how inclusion of the state law claims will alter the scope of discovery, there is no reason for the Court to resolve this preemption issue now. Accordingly, the Court will deny defendants' motion to dismiss with respect to field/conflict preemption without prejudice to it being renewed, if appropriate, after the conclusion of discovery.

## CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Defendants' motion to dismiss the federal claims is DENIED. Defendants have not shown that the federal civil rights laws conflict with the federal aviation laws.

2. Defendants' motion to dismiss the state claims on the ground that they are expressly preempted by the ADA is DENIED. Under binding Ninth Circuit law the claims are not expressly preempted.

3. Defendants' motion to dismiss the state claims on the grounds that they are impliedly preempted on the basis of field and/or conflict preemption is DENIED without prejudice to the motion being renewed after the close of discovery.

**IT IS SO ORDERED.**